# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:20CR392 |
| | ) | |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| vs. | ) | |
| | ) | |
| | ) | |
| CHARLES VACCARO, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT CHARLES VACCARO'S MOTION
## FOR RELEASE OF ASSETS SEIZED PRETRIAL[1]

Defendant Charles Vaccaro, by his counsel Randy Zelin, respectfully moves the court for an order releasing assets currently restrained pre-trial by the government.

### The Assets Mr. Vaccaro Seeks to be Released

1. 2016 Range Rover

2. 2018 Rolls Royce

3. 2018 Tesla

4. 2019 Porsche
(collectively the "Assets")

### PRELIMINARY STATEMENT

The proof shows that Mr. Vaccaro has no other assets – other than the Assets – to exercise his constitutional right to counsel and to support himself. The proof likewise shows that the Assets should not be burdened by any pre-trial restraint because the Assets were purchased with untainted funds.

---

[1] And at minimum, for a post-restraint, pre-trial hearing to challenge the restraint.

## PROOF ACCOMPANYING THIS MOTION

1.      Declaration of Charles Vaccaro.

2.      Exhibit showing that the Assets were purchased with untainted funds.

3.      Mr. Vaccaro's bank statements (redacted).

3.      Declaration of Randy Zelin.

## RELEVANT PROCEDURAL HISTORY

Working backward, this motion is timely made.  Mr. Vaccaro's counsel represented that this motion would be filed on or before December 15, 2022 (ECF Document no. 197).

This motion was necessitated by the Seizure Warrant obtained by the government on July 29, 2021 (ECF Document no. 130-1) for Mr. Vaccaro's boat, which was his home and sole source of income.  The boat was seized on August 5, 2021, and Mr. Vaccaro was displaced from his home and left without a source of income.

The seizure of the boat was the subject of extensive motion practice[2].  By order filed on November 12, 2021, the court denied Mr. Vaccaro's motion to compel the government to return the boat to Mr. Vaccaro[3].

## LAW AND ANALYSIS

Against the backdrop of the two-prong test established by the Tenth Circuit in *United States v. Jones*, 160 F.3d 641 (10th Cir. 1998) and applied by this District in *United States v. Jamieson*, 189 F.Supp.2d 754 (N.D. Ohio 2002), Mr. Vaccaro is entitled to the return of the Assets.

---

[2] The defense did not seek the return of the boat based on the *Jones* Test.
[3] The seizure of an inflatable boat was also the subject of extensive motion practice and the court denied Mr. Vaccaro's motion to compel the government to return the inflatable as well.

**Due Process**

For purposes of this motion, the government may not deprive a person of property unless the government provides the person with an equitable procedure to challenge the deprivation. *United States v. Jones, Id.*, 160 F.3d at *645, citing *U.S. Const amend. V*.  In other words, if due process is something more than a paper tiger, the aggrieved person must be allowed to be heard.  *Id.*, at *645.

*The Defendant's Important Private Interests -- the Right to Counsel and to Support Himself*

A pretrial seizure of assets – even if those assets could be returned (i.e.; if there was an acquittal or dismissal) – constitutes a deprivation of property. *Id.*, at *645. The seizure of a defendant's assets as an obstacle standing in the way of the right to the counsel of his choice is an important private interest.  *Id.*, at *646. The impact of this seizure on the defendant's interest in paying for food, shelter, and like ordinary and necessary living expenses is an equally important private interest.  *Id.*, at *646.

*The Risk of the Erroneous Deprivation of Assets*

The nature of a grand jury presentment – anything but an adversarial proceeding, with the government acting as prosecutor and judge – is a breeding ground for error and unfairness. *Id.*, at *645 citing *United States v. Sells Engineering, Inc.*, 463 U.S. 418 (1983) and *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123 (1951).  Waiting for a trial to test the propriety of the seizure of a defendant's assets risks a result of "the operation was a success but the patient died."  It simply would be too late for a defendant, who was erroneously deprived of his assets by a  government seizure. *Id.*, at *646.

**Mr. Vaccaro Has No Assets Other than the (Restrained) Assets
to Retain Counsel and Support Himself**

Mr. Vaccaro has been homeless ever since the boat was seized. He rotates between his sometime girlfriend Sheril Feldman's rental home in Florida and the couches or boats of sympathetic friends[4] (Vaccaro Decl., ¶5). The boat was his sole asset – in addition to his home and his source of income.

<u>Living Expenses</u>

The seizure of the boat also meant the end of Mr. Vaccaro's source of income. He now lives hand-to-mouth. Mr. Vaccaro works as a deckhand/crewmember on boat charters (Vaccaro Decl., ¶6). He earns on average, $300 to $400 per day and works four to six times per month (Vaccaro Decl., ¶6)[5]. Mr. Vaccaro's car broke down, and as he could not afford the repairs, he sold it. He no longer has a car (Vaccaro Decl., ¶6).

Against this income ranging from $1,200 to $2,400 per month, Mr. Vaccaro has expenses running from $250 to $350 per week (Vaccaro Decl., ¶7). Mr. Vaccaro will also be responsible for the payment of income taxes, as he is an independent contractor for these charters (Vaccaro Decl., ¶7).

Mr. Vaccaro lost his interest in the other boat he had partnered with Ms. Feldman as an investment. The other boat required approximately $85,000 in repairs/improvements to be in saleable condition. Mr. Vaccaro could not contribute his share of those costs. Ms. Feldman agreed

---

[4]The tension created by Mr. Vaccaro's arrest has driven such a wedge between Mr. Vaccaro and Ms. Feldman that Mr. Vaccaro is essentially hanging by a thread (Vaccaro Decl., ¶4). Ms. Feldman kicks Mr. Vaccaro out of her rental on a whim (Vaccaro Decl., ¶4).
[5]Attached as an Exhibit are three months of bank statements. The deposits include payments for other crew members or reimbursements to Mr. Vaccaro for laying out expenses such as fuel, food, beverages and ice (Vaccaro Decl., ¶6).

4

to pay the entirety of the costs in exchange for Mr. Vaccaro's interest (Vaccaro Decl., ¶5)[6].  The other boat has not been sold.

Mr. Vaccaro has no assets other than the Assets.  His living expenses are more or less equal and at times exceed his income – and that is without paying rent for a place to live.

**Mr. Vaccaro Cannot Afford His Legal Fees**

At present, Mr. Vaccaro has an outstanding balance of $32,643 owed to Randy Scott Zelin P.C. through November 2022.  Mr. Vaccaro also has an outstanding prior balance of $24,348.43 owed to Mr. Vaccaro's counsel Randy Zelin's prior law firm, Wilk Auslander LLP[7].

This outstanding balance is for past work and does not consider the enormous amount of work required to prepare for trial and to try this case.

## The Assets Should Not be Subject to a Pre-conviction Restraint

For the Assets to be lawfully restrained pre-conviction, it was incumbent for the grand jury to have found that they are traceable to Mr. Vaccaro's alleged offense conduct. *United States v. Jones, Id.*, at *647-648.  The grand jury got it wrong.

---

[6] While Mr. Vaccaro and Ms. Feldman have an understanding that upon the sale of the other boat, once Ms. Feldman recoups all of her costs and expenses, Mr. Vaccaro will be entitled to some of the proceeds, the reality is that any money Mr. Vaccaro might expect to receive will go to Ms. Feldman for unpaid rent and other living expenses she provides to Mr. Vaccaro when she permits him to live in her rental home (Vaccaro Decl., ¶5).

[7] Wilk Auslander LLP received the balance remaining in prior counsel's retainer account on February 21, 2021.  Mr. Vaccaro made no further payments to Wilk Auslander LLP once the retainer was used up and he has never made any payments to Randy Scott Zelin P.C.  The court is aware that Mr. Zelin will be forced to move to withdraw if he is not paid – the Assets are the only way that Mr. Vaccaro can pay legal fees.

Attached as an Exhibit is a spreadsheet reflecting that the Assets were not purchased with "tainted" assets.  The spreadsheet reflects that there were more than enough untainted funds being deposited by Mr. Vaccaro, to pay for the Assets[8].

For example:

1.       The Range Rover was purchased in June 2016 for $90,000.  There was $178,780 in non-tainted assets on hand.

2.       The Rolls Royce was purchased in June 2018 for $370,000. There was $516,883.47 in non-tainted assets on hand.

3.       The Tesla was purchased in July 2018 for $100,000.  There was $296,883.47 in non-tainted assets on hand.

4.       The Porsche was purchased in March 2019 for $150,000.  There was $5,067,488.30 in non-tainted assets on hand.

(See Exhibit Spreadsheet).

In limiting the scope of this inquiry to the traceability of the Assets, the proof shows that the government could not; nor cannot establish reasonable cause to believe that the Assets are tied to the offense conduct charged against Mr. Vaccaro by the government. *United States v. Jones, Id.*, at *647, 648.

---

[8] "Non-tainted funds" is defined as funds which were derived from the sale of "block trades" to private parties (otherwise known as private sales).  None of the funds were deposited into a "brokerage firm" as is named in the superseding indictment. Distinguishing between "non-tainted" funds and "tainted funds" is for illustrative purposes only and is not an admission that any funds were "tainted" nor is it an admission of any wrongdoing by Mr. Vaccaro. The defense is merely acting on the assumption that the grand jury did not consider sales from block trades in determining that the Assets were purchased with what the government considers "tainted" assets.

## **CONCLUSION**

Charles Vaccaro comes before this court literally with hat in hand.  He has made a prima facie showing that he has no money to retain counsel nor to be able to support himself.  The proof shows that the grand jury was mistaken in concluding that the Assets were subject to pre-conviction restraint. The Assets are not traceable to the alleged offense conduct.  They are exempt from restraint.

For these reasons, the assets requested by defendant Charles Vaccaro should be released to him; in the alternative, a hearing should be scheduled for the Court to determine that the restraining order seizing these assets should be terminated.  Charles Vaccaro also asks this court for such other and further relief as this court deems just and proper.

Dated:  December 15, 2022
          New York, New York

                                        Respectfully submitted,


                                        _Randy Zelin_
                                        Randy Zelin
                                        Randy Scott Zelin P.C.
                                        641 Lexington Ave., 29th Fl.
                                        New York, New York 10022
                                        212.319.4000
                                        rsz@rszpc.com
                                        _Attorneys for Defendant Charles Vaccaro_

To:
          All Counsel (via ECF)

7

8