UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 1:20 CR 392 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES VACCARO, *et al.*, | ) | |
| | ) | |
| Defendants | ) | ORDER |

Currently pending before the court in the above-captioned case is Defendant Charles Vaccaro's ("Defendant" or "Vaccaro") Motion for Release of Assets Seized Pretrial ("Motion") (ECF No. 198). For the following reasons, the court denies the Motion.

### I. BACKGROUND

On July 22, 2019, Vaccaro was arrested pursuant to a criminal Complaint (ECF No. 1) in the Eastern District of New York. Vaccaro made his initial appearance on that same day, and was released on a one million dollar secured bond set by a magistrate judge in the Eastern District of New York. (Order Setting Conditions of Release and Bond at PageID #94, ECF No. 4-3.) On July 23, 2020, a grand jury in this district returned a 15-count Indictment against Vaccaro and others. The Indictment alleged Vaccaro was involved in a conspiracy to commit securities fraud, wire fraud, and money laundering, as well as the substantive offenses of securities fraud and wire fraud, through a so-called "pump and dump" scheme. (Indictment, ECF No. 21.)

On April 29, 2021, the Government filed a Superseding Indictment (Superseding Indictment,

ECF No. 78), which added four additional counts and three additional defendants. Relevant to the pending Motion, the forfeiture provision of the Superseding Indictment listed as subject to forfeiture Vaccaro's 2016 Range Rover, 2018 Rolls Royce Dawn, 2019 Porsche 911, and 2018 Tesla Model S (collectively, the "Seized Assets"). (*Id*. ¶¶ 99(c)–(f).)

On July 29, 2021, the Government obtained a warrant (Seizure Warrant, ECF No. 130-1) to seize a boat of Vacarro's, which was executed on August 5, 2021. Shortly after the boat was seized, Vaccaro filed a Motion to Stay (ECF No. 128), asking the court to compel the Government to return the boat, which Vaccaro maintains was both his home and his sole source of income. (*Id*. at PageID #715–717; Motion at PageID #990, ECF No. 198.) The court denied that Motion on November 12, 2021. (Order, ECF No. 156.)

On December 15, 2022, Defendant filed the instant Motion for Return of Property (ECF No. 198), seeking release of the Seized Assets, which Defendant argues were purchased with untainted funds, so that Defendant may liquidate them to pay his counsel of choice and necessary living expenses. The Government submitted a Response (ECF No. 207) on January 17, 2023. Vaccaro filed his Reply (ECF No. 209) on February 6, 2023, and filed a Supplement to his Reply (ECF No. 210) the following day.

## II. LAW AND ANALYSIS

District courts in this Circuit consistently analyze pretrial, post-seizure challenges to a seizure order under the two-prong test established in *United States v. Jones*, 160 F.3d 641, 643 (10th Cir. 1998). *See United States v. Jamieson*, 189 F. Supp. 2d 754, 757 (N.D. Ohio 2002) (applying the *Jones* test to determine whether the defendant was entitled to a probable cause hearing on the court's order freezing his assets); s*ee also United States v. Koher*, No. 3:18-CR-73, 2018 WL 6319895, at

*1 (S.D. Ohio Dec. 3, 2018) (relying on *Jamieson* in applying the *Jones* test to the defendant's challenge to the pre-trial seizure of her assets); *United States v. Wood*, No. 3:15-CR-14-GFVT-REW, 2016 WL 8131240, at *7 (E.D. Ky. Oct. 3, 2016) (same); *United States v. Dortch*, No. 2:17-CR-20155-SHM-11, 2018 WL 1960777, at *3 (W.D. Tenn. Apr. 26, 2018) (same); *United States v. St. George*, 241 F. Supp. 2d 875, 878 (E.D. Tenn. 2003) (same). Under the *Jones* test, a defendant must make a threshold showing: (1) "that [the defendant] has no funds from which to retain counsel of his choosing or to support himself or his family," and (2) "that there are assets which should not have been covered by the grand jury's forfeiture provisions of the indictment." *Jamieson*, 189 F. Supp. 2d at 757. If a defendant makes both showings, "due process requires a hearing at which the government must establish probable cause to believe that the restrained assets are in fact traceable to the underlying offense." *Id*. at 758.

Applying the first prong of the *Jones* test to the facts of this case, the court finds that Vaccaro has made a threshold showing on the question of his available assets. As explained above, the first prong of the *Jones* test requires Vaccaro to show that he has no other assets—other than the Seized Assets—to exercise his Sixth Amendment right to retain counsel or to support himself or his family. Vaccaro argues that he has no other assets since one of his boats was seized by the Government (see the court's Order affirming that seizure, ECF No. 156), and he transferred his interest in his other boat (the "Second Boat") to his "sometime girlfriend" Sheril Feldman ("Feldman") in exchange for Feldman's payment in full of approximately $85,000 in maintenance costs required to keep that boat in saleable condition. (Mot. at PageID #992–93, ECF No. 198; Reply Ex. 3 at PageID #1105, ECF No. 209-3; Suppl. to Reply Ex. 1 at PageID #1107, ECF No. 210-1.) Vaccaro further submits that his work as a deckhand on boat charters nets an income of $1,200 to $2,400 per month, compared

to monthly expenses of between $1,000 and $1,400. (*Id.* at PageID #992.) Defendant's counsel, Randy Zelin ("Zelin"), attests that Vaccaro owes Zelin and the law firm Wilk Auslander LLP a combined total of $56,991.43 as of the time of filing. (Mot. Ex. 2 at PageID #1001, ECF No. 198-2.)

The Government responds that Vaccaro retains an interest in the Second Boat worth approximately $422,908, and that it "strains credulity" that Vaccaro would surrender such an interest to Feldman for approximately $85,000 in boat repairs and improvements. (Resp. at PageID #1064, ECF No. 207.) The Government bases its contention on an Affidavit of FBI Special Agent Anthony Fry ("Fry"), who has been involved in the financial fraud investigation of Vaccaro since May 2019. (Aff. at PageID #1076, ECF No. 207-1.) Based on Fry's accounting of the transfers into and out of a bank account in the name of C-Weed International Yacht Charters LLC—a company of which Vaccaro was identified as an authorized manager until May 2022—the Government reasons that Vaccaro was responsible for approximately 83 percent of the approximately $509,528 paid toward the purchase, improvement, and operation of the Second Boat. (Resp. at PageID #1066, ECF No. 207.) The Government therefore asserts that Vaccaro holds an equity interest in the Second Boat worth approximately $422,908. The Government also points to listings and reviews posted to online boat chartering platforms, which suggest that Vaccaro remains involved in the operation of the Second Boat. (*Id.* at PageID #1067.)

The court finds it plausible that, notwithstanding the value of Vaccaro's interest in the Second Boat, he forfeited that interest to Feldman in exchange for her payment of boat repair and improvement expenses. Vaccaro has produced evidence suggesting that Feldman paid for the Second Boat's restoration, and that Vaccaro subsequently dissociated from C-Weed International Yacht Charters, LLC. (*See* Reply Ex. 3, ECF No. 209-3; Suppl. Ex. 1, ECF No. 210.) The evidence of

Vaccaro's continued involvement with the chartering of the Second Boat is consistent with Vaccaro's own claim that he currently works as a deckhand for $300 to $400 per day. In light of these facts, the court finds that Vaccaro has made the requisite showing that he lacks funds from which to retain counsel and support himself.

However, Defendant's Motion nevertheless fails because he has not made a threshold showing "that there are assets which should not have been covered by the grand jury's forfeiture provisions of the indictment." *See Jamieson*, 189 F. Supp. 2d at 757. Vaccaro contends that the Seized Assets were not purchased with assets tainted by the alleged securities fraud scheme because at the time of purchase of each vehicle, the value of the untainted assets on hand exceeded the purchase price. (Mot. at PageID #994, ECF No. 198.) The Government responds with an Affidavit of FBI Forensic Accountant Alex Chuna, whose investigation into the alleged fraud scheme shows that Defendant paid for the Seized Assets using two bank accounts: one identified as Bank Account 3 which received at least 96 percent of its deposits from registered and unregistered brokerage firms and another business, all of which were associated with the alleged fraudulent scheme; and one identified as Bank Account 1, which received all or nearly all of its deposits from Bank Account 3. (Aff. of Alex Chuna at PageID #1083, ECF No. 207-2.)

Defendant's argument that the funds used to purchase the Seized Assets are not traceable to the alleged fraudulent scheme are unpersuasive. In asserting that he held sufficient untainted funds to purchase each of the Seized Assets, Vaccaro maintains that only those deposits from registered brokerage firm Wilson Davis were tainted, while all other deposits (most of them from unregistered brokerage firms) were not. (Reply at PageID #1091, ECF No. 209.) In his Reply, Defendant contends that "nowhere does the government refute the legitimacy of the over $9 million in 'non Wilson

Davis' deposits; nor does the Government establish how any of these [non-Wilson Davis] funds are tainted as traceable to the fraudulent scheme alleged in the superseding indictment"—but that is exactly what the Government does in its Response. (*Id.* at PageID #1091.) Vaccaro characterizes the non-Wilson Davis funds as "funds which were derived from the sale of 'block trades' to private parties[,]" but as the Government describes, those trades were also alleged to have involved shares of companies manipulated in Defendant's "pump and dump" securities fraud scheme, with those private parties acting as unregistered brokers who paid Vaccaro kick-backs from the proceeds from their own sales of shares of manipulated companies. (Mot. at PageID #994 n. 8, ECF No. 198; Resp. at PageID #1074, ECF No. 207.) The Superseding Indictment states the following regarding unregistered brokers in its General Allegations section and in the Manner and Means allegations under Count 1:

> 44. VACCARO, SVORAI, RUGGERI, and others acting on their behalf also used unregistered brokers to liquidate and sell free trading shares of stock in the Manipulated Public Companies after they were unable to continue to clear shares with U.S.-based registered brokers. The Defendants paid the unregistered brokers commissions, in the form of kickbacks, for selling the shares of the Manipulated Public Companies into the stock market. …
>
> 67. It was part of the conspiracy that: …
>
>> j. VACCARO, SVORAI, BERLLY, and others, deposited and attempted to deposit shares of the Manipulated Public Companies at registered brokers, and if the deposit was rejected, Defendants sought out another broker who would accept the deposit.
>
>> k. VACCARO, SVORAI, HAGEN, and others, paid stock promoters and media companies to promote the Manipulated Public Companies at the same time the Defendants and others were depositing large blocks of shares with registered and unregistered brokers.

(Superseding Indictment at PageID# 470, 477–79, ECF No. 78.) These excerpts make clear why funds received from entities other than registered brokers like Wilson Davis would still constitute tainted funds related to the alleged securities fraud scheme. Vaccaro has presented no *bona fide* reason to believe that the grand jury reviewing the superseding indictment or the magistrate judge approving the seizure warrant erred in concluding that there existed probable cause to conclude that the Seized Assets had been purchased with tainted funds, and were therefore subject to forfeiture. Because he has failed to fulfill the second prong of the *Jones* test, Defendant's Motion must be denied.

### III. CONCLUSION

For the foregoing reasons, the court denies Defendant's Motion for Release of Assets Seized Pretrial (ECF No. 198). Accordingly, as indicated in the Telephonic Pretrial Conference on March 21, 2023, the Pretrial Conference set for 3:00 p.m. on May 2, 2023 will be held telephonically.

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

April 19, 2023