IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CASE NO. 1:20CR392-1 |
| Plaintiff, | * | |
| -vs- | * | JUDGE SOLOMON OLIVER, JR. |
| CHARLES VACCARO | * | <u>DEFENDANT CHARLES VACCARO'S MOTION IN LIMINE TO EXCLUDE</u> |
| Defendant | * | <u>EXPERT OPINIONS OF PETER MELLEY</u> |
| * * * | | |

Now comes the Defendant, Charles Vaccaro, by and through undersigned counsel, and hereby moves this Court in limine to exclude the expert opinions of the government's expert witness, Peter Melley.

It is Mr. Vaccaro's position that a review of the government's Rule 16 Disclosure reveals that its contents fail to adequately inform him of what opinions Mr. Melley will offer on the topics identified in the disclosure. This failure prevents him from having the ability to prepare to test Mr. Melley's opinions at trial, and merits exclusion.

In this case, the Government alleges a "pump and dump" scheme related to stock in PotNetwork Holdings, Inc., ("POTN"), Vapor Group, Inc. ("Vapor" or "VPOR"), CLIC Technology, Inc. ("CLCI"), White Label Liquid, Inc. ("White Label Liquid" or "WLAB"), Canna Corporation ("Canna" or "CNCC"), and Grand Capital Ventures, Inc. ("Grand Capital" or "GRCV"). On June 10, 2024, pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure, the Government served its Expert Disclosure on the Defendants. (Ex. A, Expert Disclosure.) The Expert Disclosure identifies Peter Melley, Esq., the Director of the Criminal Prosecution Group at the Financial Regulatory Agency, as its expert witness. (*Id*. at 2.) The report details Mr. Melley's job history, and then indicates that "Mr. Melley will testify, in sum

and substance, as follows." (*Id*.) That statement is followed by 17 bullet points that set forth descriptions or definitions of various agencies and terms. (*Id*. at 2-4.) For example:

• The United States Securities and Exchange Commission ("SEC") is an independent agency of the United States government responsible for regulating publicly traded companies and enforcing federal securities laws, which are designed to provide the investing public with full disclosure of all material facts regarding matters involving the offer, purchase, and sale of securities, among other things. The purpose of these laws is to protect the public by maintaining fair, honest, and transparent securities markets and prevent manipulative practices that tend to distort the price of a security.

• FINRA is a self-regulatory organization for the securities industry. FINRA regulates the activities of its members, which include member brokerage firms and registered employees of those firms and promulgates rules accordingly. FINRA conducts surveillance across different securities and product platforms, including the market for penny stocks. FINRA often makes referrals to the SEC.

\* \* \*

• A "public company" is a company that has issued stock which is traded on a stock market.

\* \* \*

• A "call room" or a "boiler room" refers to an operation that identifies, and solicits potential investors to encourage them to purchase, and subsequently, not to sell, securities.

• A "match trade" is a purchase and sale of stock that was prearranged so that the purchase and sale orders matched each other in price, volume, and time of execution. This arrangement

increased the trading volume of the socket and allowed the seller to sell the stock when, without such arrangement, there would not be a market demand for the stock.
(*Id*. at 2-4)

There also four bullet points that describe aspects of a pump and dump scheme:

• Common aspects of a pump and dump stock manipulation scheme include the 'pumping' of a stock to increase its price and volume through false or misleading press releases and promotions using, *e.g.*, email and internet campaigns and manipulative trading, and the 'dumping' of shares at prices that are artificially inflated by means of promotions and press releases, or via artificially inflated interest in the stock, *i.e.* volume, generated by means of promotions and press releases.

• Perpetrators of a pump and dump scheme frequently seek to hide their connection to the issuer, the trading activity, and/or the promotional activity through the use of nominee entities or accounts. For example, perpetrators often hold shares, prior to "dumping" them, in the name of a nominee or shell entity.

• Perpetrators of pump and dump schemes may use convertible debt as a mechanism to obtain shares from the issuer. In such cases, the convertible debt is frequently purchased, often in the name of a nominee or shell entity, at a low price so that, after conversion, the shares are effectively issued for only a nominal amount per share. The debt security utilized to effect this scheme is often called a "convertible note."

• Perpetrators of pump and dump schemes sometimes attempt to centralize their control over the issuer by having the issuer undertake a reverse stock split, which consolidates the number of outstanding shares by converting each outstanding share to a fraction of a share. This would typically be undertaken before the perpetrators obtained additional shares from the issuer,

3

frequently in the name of a nominee or shell entity. The reverse stock split lowers the number of shares perpetrators of pump and dump schemes need to obtain to have a control stake of an issuer.

(*Id*. at 3.)

In the third to last paragraph of the Expert Disclosure, the government states as follows: In addition, the Government anticipates that Mr. Melley will provide summary testimony regarding trading in PotNetwork Holdings, Inc., ("POTN"), Vapor Group, Inc. ("Vapor" or "VPOR"), CLIC Technology, Inc. ("CLCI"), White Label Liquid, Inc. ("White Label Liquid" or "WLAB"), Canna Corporation ("Canna" or "CNCC"), and Grand Capital Ventures, Inc. ("Grand Capital" or "GRCV"), including publicly reported trading prices and volumes, blue sheet data, press releases, online promotional campaign materials, and transfer share records that have been produced in discovery. Mr. Melley's summary testimony will make use of certain summary charts and graphics that have not yet been prepared but will be provided in a timely fashion in advance of the trial and Mr. Melley's testimony.

The Expert Disclosure further states: We have produced the information we provided to Mr. Melley in discovery using the following bates ranges: USA242337-USA277958; USA277959-USA277963; USA278793-USA278825. Trading summaries, blue sheet analyses, and price and volume charts prepared by Mr. Melley were previously produced at the following bates range: USA277964-USA278792. (*Id*. at 4.)

As set forth above, the Expert Disclosure lists multiple topics about which Mr. Melley will provide testimony. It does not, however, describe his analysis of those topics, nor does it provide any actual opinion that he will offer to the jury at trial in this case. The Expert Disclosure is patently insufficient to satisfy the important purposes of Rule 16(a)(1)(G).

4

Federal Rule of Criminal Procedure 16(a)(1)(G), which governs the parties disclosure obligations relating to expert witnesses, requires, in part, that the government must provide a written summary of any testimony the government intends to offer under Federal Rule of Evidence 702 in its case-in-chief at trial.  Effective December 1, 2022, Rule 16(a)(1)(G) now requires that the government make an expert disclosure that includes "a complete statement of all opinions that the government will elicit from the witness," and "the bases and reasons for" the opinions.   Fed. R. Crim. P. 16(a)(1)(G)(iii).  The Notes of Advisory Committee on 2022 Amendment stated that the change was to address a shortcoming of the prior provisions: "…the lack of adequate specificity regarding what information must be disclosed…"

After the amendment, Rule 16(a)(1)(G)(i) of the Federal Rules of Criminal Procedure requires the Government to disclose, "in writing" any expert testimony "it intends to use at trial under Federal Rule of Evidence 702, 703, or 705 during its case-in-chief."  The written summary "must contain" the following:

- a complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C);
- the bases and reasons for them;
- the witness's qualifications, including a list of all publications authored in the previous 10 years; and
- a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

Fed. R. Crim. P. 16(a)(1)(G)(iii).

It is Mr. Vaccaro's belief that the government has not provided him with the required opinion of the expert as required under Rule 16(a)(1)(G). As set forth in the examples of what he did receive, the government offers little more than a list of definitions and topics about which the expert intends to offer testimony of at trial. This is woefully inadequate and completely fails to comply with the Rule or the Amendments. In a case decided by the Sixth Circuit prior to the 2022 Amendments, the Court found insufficient notice by the government, and stated, "[t]he record clearly reflects that the government's Rule 16 response did not describe in great detail 'the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.' *See,* Fed.R.Crim.P. 16(a)(1)(G). In 1993, the drafters amended Rule 16 to require such disclosure 'to minimize surprise that often results from unexpected expert testimony ... and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination.' Fed.R.Crim.P. 16 advisory committee's note (1993)." *United States v. White*, 492 F.3d 380, 406 (6th Cir. 2007). This is exactly what the Expert Disclosure is missing in this case. There is no opinion and there is absolutely no basis and reasons for any opinion. The Disclosure herein fails to satisfy Rule 16 requirements.

The third to last paragraph in the Expert Disclosure states that Mr. Melley "…will provide summary testimony regarding trading…" in several companies listed in the indictment. But the government makes no effort to describe that testimony. (*Id*. at 4.) Instead, it merely lists topics that Mr. Melley will apparently address in his testimony, just like the bullet point list that precedes it. And, just like the bullet point list, the information in that paragraph is nothing more than a recitation of subjects without the analysis that is the hallmark of expert opinion.

The Expert Disclosure is completely devoid of any reference to the basis for Mr. Melley's opinions. What is woefully lacking in the Disclosure is the fact that there is not a

6

single reference to any explanation of how Mr. Melley arrived at the opinions he intends to offer at trial. Without a disclosure of the bases and reasons for the opinions, Mr. Vaccaro will not have the fair opportunity to prepare for trial, and also not be prepared to cross-examine Mr. Melley. As the Amendment Notes set forth, "[t]o ensure that parties receive adequate information about the content of the witness's testimony and potential impeachment…—delete the phrase "written summary" and substitute specific requirements that the parties provide "a complete statement" of the witness's opinions, the bases and reasons for those opinions…".

     Mr. Vaccaro is requesting that this Court exclude Mr. Melley's testimony, which Rule 16(d)(2)(C) authorizes this Court to do. The decision is within the Court's discretion concerning Rule 16 disclosures. As the Expert Disclosure lists topics, but fails to describe Mr. Melley's opinions, or even a basis for that opinion, Mr. Vaccaro is unable to fully cross examine him at trial. He requests that the Court exclude Mr. Melley's testimony and prohibit the Government from offering him as an expert at trial.

                                        Respectfully submitted,

                                        */S/ NATHAN A. RAY*
                                        NATHAN A. RAY #0041570
                                        Attorney for Defendant
                                        137 South Main Street, Suite 201
                                        Akron, Ohio 44308
                                        330-253-7171 - 330-253-7174 fax
                                        burdon-merlitti@neo.rr.com

PROOF OF SERVICE

      I hereby certify that on September 5, 2024, a copy of the foregoing Defendant Charles Vaccaro's Motion in Limine To Exclude Opinions Of Peter Melley was electronically filed. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

                                                */S/ NATHAN A. RAY*
                                                NATHAN A. RAY
                                                Attorney for Defendant