IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:20-CR-392 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES VACCARO, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' MOTION FOR AN INTERLOCUTORY ORDER OF SALE AND ORDER**

The United States moves this Court to issue an Order for the Interlocutory Sale of the below-listed subject properties and to authorize the United States Marshals Service (USMS) to sell the properties in accordance with Department of Justice (DOJ) policy on the disposition of personal property.  The grounds for issuing the Order for the Interlocutory Sale are: (i) following their seizure pursuant to the execution of federal seizure warrants, each of the subject properties has been in the custody and care of the USMS.  During this time, the properties have depreciated in value and are at risk for further deterioration or decay; (ii) the expenses of storing and maintaining the subject properties are accruing and will soon exceed - or have exceeded - their net worth; and (iii) this Court is authorized to approve interlocutory sales.

A. *The Superseding Indictment*.

On April 29, 2021, a 19-count Superseding Indictment (R. 78) was returned in N.D. Ohio Case No. 1:20-CR-392 against defendant Charles Vaccaro and five co-defendants.  Defendant Vaccaro was charged as follows:

Count 1: Conspiracy to Commit Securities Fraud [15 U.S.C. Sections 78j(b), 78ff, and 17 C.F.R. Section 240.10b-5 (Securities Fraud) and 15 U.S.C. Sections 78i(a)(1) and 78ff (Manipulative Securities Trading)], in violation of 18 U.S.C. § 371.

Counts 2-8: Securities Fraud, in violation of 15 U.S.C. Sections 78j(b), 78ff, and 17 C.F.R. Section 240.10b-5.

Count 10: Securities Fraud, in violation of 15 U.S.C. Sections 78j(b), 78ff, and 17 C.F.R. Section 240.10b-5.

Count 15: Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. Section 1349.

Counts 16-18:
 Wire Fraud, in violation of 18 U.S.C. Section 1343.

Count 19: Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. Section 1956(h).

A telephone status conference was held on June 9, 2025. Counsel for defendant Vaccaro made an oral motion to continue the case, so that they can complete review of the voluminous discovery and continue discussions with their client. Counsel for the United States had no objection, and the Court granted the continuance. (R. 439: Status Conference Order). All counsel advised the Court of their various trial schedules in the upcoming months. The Court impressed on counsel the importance of moving this matter forward toward final conclusion as it has been pending for quite some time. However, based on the trial schedules of counsel for defendant Vaccaro and the United States, it appeared that it would be difficult to schedule a trial before early 2026. (*Id*., at p. 2).

B. *The Subject Properties*.

Each of the properties subject to forfeiture in this case has been in the custody and care of the USMS since the date of its seizure. The following sets forth a description of each of the subject properties and the cost to the USMS for its storage and maintenance. As described

below, the costs to the USMS for the storage and maintenance of the subject properties have been - and will continue to be - substantial.

- 2016 Range Rover, VIN: SALWV2EF8GA544909. Charles Vaccaro purchased the vehicle on or about July, 2017, from Momentum Jaguar and Volvo for $90,327.79. Upon its purchase, the vehicle was titled to Charles Vaccaro and there are no liens attached to the vehicle. The vehicle was seized pursuant to the execution of a federal seizure warrant issued on July 30, 2020.

    USMS Value at Seizure: $44,200.00
    Most Recent USMS Appraisal (September 20, 2024): $24,450.00
    Total USMS Expenses: $13,742.54 (daily accumulation).

- 2018 Rolls Royce Dawn, VIN: SCA666D53JU115744. Charles Vaccaro purchased this vehicle on or about July, 2018, from Gold Coast Exotic Imports LLC for $376,660.94. Upon its purchase, the vehicle was titled to Charles Vaccaro and there are no liens attached to the vehicle. The vehicle was seized pursuant to the execution of a federal seizure warrant issued on July 21, 2020.

    USMS Value at Seizure: $393,800.00
    Most Recent USMS Appraisal (December 31, 2024): $244,400.00
    Total USMS Expenses: $16,256.14 (daily accumulation).

- 2019 Porsche 911, VIN: WP0BB2A95KS125806. Charles Vaccaro purchased this vehicle on or about March, 2019, from Copans Motors Inc. for $164,481.14. Upon its purchase, the vehicle was titled to C Weed Yacht Charter LLC, a company controlled by Charles Vaccaro. There are no liens attached to the vehicle. The vehicle was seized pursuant to the execution of a federal seizure warrant issued on August 17, 2020.

    USMS Value at Seizure: $109,375.00
    Most Recent USMS Appraisal (December 19, 2024): $112,675.00
    Total USMS Expenses: $13,588.95 (daily accumulation).

- 2018 Tesla Model S 100D, VIN: 5YJSA1E23JF261390. Charles Vaccaro purchased this vehicle on or about July, 2018, from Tesla Motor Corp. for $116,919.83. Upon its purchase, the vehicle was titled to Charles Vaccaro and there are no liens attached to the vehicle. The vehicle was seized pursuant to the execution of a federal seizure warrant issued on July 30, 2020.

    USMS Value at Seizure: $64,400.00
    Most Recent USMS Appraisal (September 20, 2024): $28,775.00
    Total USMS Expenses: $14,233.45 (daily accumulation).

- 2001 Azimut 70' Yacht, Hull ID Number: XAX70058E001, USCG Registration Number: D01102462.  Charles Vaccaro purchased this vessel on or about September 20, 2017, for $265,925.00.  Upon its purchase, Charles Vaccaro titled the vessel in the name of C Weed Yacht Charter LLC, a company controlled by Charles Vaccaro.  There are no liens attached to the vessel.  The vessel was seized pursuant to the execution of a federal seizure warrant issued on July 29, 2021.

    USMS Value at Seizure: $727,246.00
    Most Recent USMS Appraisal (April 24, 2025): $300,000.00
    Total USMS Expenses: $423,180.23 (daily accumulation).

- AB JET 330 ("dinghy"), with corresponding Vessel Identification Number: MSN45017G819 and Title Number: 132123201.  Charles Vaccaro purchased the "dinghy" in or about March, 2019, for $28,670.00.  There are no liens attached to the boat.  The boat was seized pursuant to the execution of a federal seizure warrant issued on July 29, 2021.

    USMS Value at Seizure: $22,000.00
    Most Recent USMS Appraisal (August 22, 2024): $22,000.00
    Total USMS Expenses: n/a - the "dinghy" is/was affixed to the 2001 Azimut 70' yacht and was a part of the seizure of the yacht.

- 1984 Magnum Marine 53' Yacht, Hull ID Number: MAG530270682, Primary Vessel Number: 671092, seized pursuant to the execution of a federal seizure warrant issued on February 15, 2023.  The name of the vessel is Marchese Yacht.  There are no liens attached to the vessel.

    USMS Value at Seizure: $147,000.00
    Most Recent USMS Appraisal (May 5, 2025): $83,000.00
    Total USMS Expenses: $211,830.01 (daily accumulation).

To date, the USMS has incurred $57,821.08 for storage and maintenance costs in connection with the (4) vehicles and over $635,000.00 as to the (3) vessels.  For two of the vehicles, storage and maintenance costs now approximate 50% of each vehicle's most recent USMS appraised value.  The financial picture as to the vessels is even more alarming.  As to both yachts, USMS expenses already exceed each vessel's most recent USMS appraised value.  Further, for both the vehicles and the vessels, these storage and maintenance costs will continue to accrue for the foreseeable future.  Without the instant Order for Interlocutory Sale, the subject

4

properties cannot be sold until defendant Vaccaro's criminal trial is completed and the Court has entered a final order of forfeiture.  However, as set forth above, it appears that any trial in this case will not take place until early 2026.  Assuming, *arguendo*, that defendant Vaccaro is convicted at such trial, and the subject properties are initially forfeited to the United States, a final forfeiture order could still be months away pending the completion of publication and any (forfeiture) ancillary proceeding.  It is not unrealistic to conclude that any final order of forfeiture in this case could be a year, or more, away.  During this entire period, storage and maintenance costs will continue to accrue, and the subject properties will further depreciate in value while in storage.

Therefore, to mitigate further loss, the United States respectfully submits that this Court should permit the USMS to conduct interlocutory sales of the subject properties.

C.      *This Court is Authorized to Approve Interlocutory Sales.*

This Court has authority to issue an Interlocutory Order of Sale.  Rule 32.2(b)(7) of the Federal Rules of Criminal Procedure provides: "At any time before entry of a final forfeiture order, the court, in accordance with Supplemental Rule G(7) of the Federal Rules of Civil Procedure, may order the interlocutory sale of property alleged to be forfeitable."

In turn, Supplemental Rule G(7)(b) of the Federal Rules of Civil Procedure (also known as Rule G(7)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions) provides:

>    (i) **Order to Sell**.  On motion by a party or a person having custody of the property, the court may order all or part of the property sold if:
>
>    (A)  the property is perishable or at risk of deterioration, decay, or injury by being detained in custody pending the action;
>
>    (B)  the expense of keeping the property is excessive or is disproportionate to its fair market value;

    (C) the property is subject to a mortgage or to taxes on which the owner is in default; or

    (D) the court finds other good cause.

Only one of the grounds for interlocutory sale is required since Supplemental Rule G(7)(b)(i) is disjunctive. Thus, this court may order an interlocutory sale for any one of the reasons set forth in the rule. *See*, *United States v. Real Property and Residence located at 4816 Chaffey Lane*, 699 F.3d 956, 960 at n. 5 (6th Cir. 2012) (Appellants "argue that multiple subsections of Rule G(7)(b)(i) must be satisfied in order to permit an interlocutory sale … . There is no statutory support for this position; Rule G(7)(b)(i) is disjunctive, so any one disjunct can satisfy its terms.").

In this case, two of the four reasons set forth in Supplemental Rule G(7)(b)(i) for an interlocutory sale apply with regard to the subject properties: (i) the subject properties have depreciated and are at risk of further depreciation/deterioration while the criminal prosecution and forfeiture processes are completed; and, (ii) the expense of keeping the subject properties is excessive and disproportionate to their fair market value in that storage fees and maintenance fees have accrued and will continue to accrue to keep the subject properties in storage and in their current condition. Under Supplemental Rule G(7)(b)(i), Fed. R. Crim. P. 32.2(b)(7), and the applicable case law, this showing is sufficient in order to permit an interlocutory sale. *See*, *United States v. Howard*, 2024 WL 1117001 (E.D.N.C. 2024) (that defendant has not yet been convicted is of no moment, as interlocutory sales are authorized by Rule 32.2(b)(7); mounting storage costs as compared to value of vehicle is sufficient to justify sale); *United States v. Rose,* 2022 WL 3083582 (E.D. Cal. 2022) (granting motion for interlocutory sale and conversion of vehicle to a substitute *res* to avoid further depreciation and storage costs); *United States v.*

6

*Hurbace,* 2019 WL 1984139 (D. Nev. 2019) (granting motion for interlocutory sale of Jaguar convertible pursuant to Rule 32.2(b)(7) and Supplemental Rule G(7)(b)(i) because the past and pending storage costs would exceed its fair market value); *United States v. Guzman,* 2013 WL 12228400, at *3 (M.D. Tenn. 2013) (depreciation and storage costs justify interlocutory sale of seized airplane; government should not be penalized for having seized the airplane instead of leaving it in defendant's possession); and, *United States v. Hailey*, 2011 WL 6202787, at *1 (D. Md. 2011) (Rule 32.2(b)(7) authorizes pre-trial interlocutory sale of vehicles to avoid storage costs, computer equipment to avoid depreciation, and unimproved land to lessen the risk of liability for accidents and taxes and to allow the government to market the property).

Based upon the foregoing, the United States respectfully submits that this Court is authorized to approve interlocutory sales and that this Court should authorize the interlocutory sale of the subject properties in this case. That being said, two considerations remain; namely, who should conduct the interlocutory sales and how should they be conducted. As to the first point, Supplemental Rule G(7)(b)(ii) provides that the interlocutory "sale must be made by a United States agency that has authority to sell the property, by the agency's contractor, or by any person the court designates." Courts favor interlocutory sale by the U.S. Marshals Service/the contractor of the U.S. Marshals Service. *See*, *United States v. $510,910.00 in United States Currency*, 2020 WL 3840502 (S.D. Ill. 2020) ("[T]he Court agrees that the interlocutory sale of the defendant RV is appropriate due to its depreciation in value . . . and the expense of storing and maintaining the vehicle. The Court further agrees with the United States that the sale should be conducted by the United States Marshals Service through its contractor … . ... [A]n auction by the United States Marshal will be the most efficient method of selling the RV … .").

As to the second point, the manner of the interlocutory sale is governed by Supplemental Rule G(7)(b)(iii) which, in turn, provides that the sale is governed by 28 U.S.C. Sections 2001, 2002, and 2004. Sections 2001 and 2002 relate to the sale of realty. Particularly, in pertinent part, § 2001 provides for the sale of realty by a private sale (that must undergo a lengthy confirmation process) or by a public sale at the county courthouse. Section 2004 relates to the sale of personalty and provides that the property be sold in accordance with § 2001, "unless the court orders otherwise." In this case, interlocutory sales under § 2001 would be impracticable. Public sales on the steps of the county courthouse would not serve to maximize sale proceeds and, with respect to any private sale, the case of *$510,910.00 in United States Currency*, 2020 WL 3840502, at \*1, is again on point. Therein, in addition to finding that the interlocutory sale should be conducted by the USMS, the court also found that a sale by the USMS would be more efficient than a private sale in light, among other things, of the potentially lengthy confirmation process that a private sale must undergo. In this case - under Supplemental Rule G(7)(b)(iii) and 28 U.S.C. Section 2004 - the USMS should be authorized to sell the subject properties and such sales should be in accordance with DOJ policy on the disposition of personal property.

D.   *Conclusion*.

As set forth above, without the instant Order for Interlocutory Sale, the subject properties cannot be sold until defendant Vaccaro's criminal trial is completed and the Court has entered a final order of forfeiture. In all probability, that could be a year or more away. Based upon the financial information set forth above, there has been substantial depreciation of the subject properties and substantial storage/maintenance costs have been incurred. This will only continue until the entry of any final order of forfeiture. During the intervening period, storage and maintenance costs will continue to accrue, and the subject properties will further depreciate in

value while in storage.  Under the case law, depreciation and storage/maintenance costs justify the interlocutory sale of seized property.

Therefore, it is respectfully requested that the Court order the interlocutory sale of the subject properties in accordance with Supplemental Rule G(7)(b)(i) and authorize the United States Marshals Service to sell the properties in accordance with Department of Justice (DOJ) policy on the disposition of personal property.  Supplemental Rules G(7)(b)(ii) and G(7)(b)(iii). The proceeds of such sales shall be a substitute *res* subject to forfeiture in place of the property that was sold.  Supplemental Rule G(7)(b)(iv).

    Respectfully submitted,

    Carol M. Skutnik
    Acting United States Attorney, N.D. Ohio

By:    /s/ James L. Morford    .
    James L. Morford (Ohio: 0005657)
    Assistant United States Attorney, N.D. Ohio
    Carl B. Stokes U.S. Court House
    801 West Superior Avenue, Suite 400
    Cleveland, Ohio 44113
    216.622.3743 / James.Morford@usdoj.gov

**SO ORDERED** this _____ day of June, 2025.  The United States' Motion for an Interlocutory Order of Sale is granted.  The United States Marshals Service is authorized to sell the subject properties in accordance with Department of Justice (DOJ) policy on the disposition of personal property.  The proceeds of such sales shall be a substitute *res* subject to forfeiture in place of the property that was sold.

    _____
    Solomon Oliver, Jr.
    United States District Judge, N.D. Ohio

**CERTIFICATE OF SERVICE**

    It is hereby certified that on this 23rd day of June, 2025, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

    A copy of the foregoing also will be served by e-mail upon Richard H. Blake, McDonald Hopkins LLC - Attorney for Sheril Feldman - at: rblake@mcdonaldhopkins.com.  Sheril Feldman is a potential third-party claimant to the subject 1984 Magnum Marine 53' Yacht, Hull ID Number: MAG530270682, Primary Vessel Number: 671092.

/s/ James L. Morford                              .
James L. Morford (Ohio: 0005657)
Assistant United States Attorney, N.D. Ohio